# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Alier D., <br><br> Petitioner, <br><br> v. <br><br> Secretary of Department of Homeland Security; Atty General Jefferson Sessions; Scott Baniecke, ICE Field Office Director; and Sheriff Kurt Freitag, <br><br> Respondents. | Case No. 18-cv-01645 (NEB/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

Alier D., Freeborn County Jail, 411 South Broadway Avenue, Albert Lea, MN 56007, *pro se*

Ana H. Voss, Ann M. Bildtsen, and Pamela Marentette, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondents Secretary of Department of Homeland Security, Atty General Jefferson Sessions, and Scott Baniecke

David John Walker, Freeborn County Attorney's Office, 411 South Broadway Avenue, Albert Lea, MN 56007, for Respondent Kurt Freitag

HILDY BOWBEER, United States Magistrate Judge

On June 12, 2018, Petitioner Alier D. filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his custody by U.S. Immigration and Customs Enforcement (ICE) under 8 U.S.C. § 1226(c). (Pet. [Doc. No. 1].) Respondents filed their response on July 18, 2018. (Resp. to Pet. [Doc. No. 6].) On August 6, 2018, Petitioner filed a reply to the response. (Pet'r's Reply [Doc. No. 11].) As set forth

1

below, the Court recommends that the Petition be granted in part and denied in part.

## I. Background

### A. Petitioner's Personal Background

Petitioner is a native and citizen of South Sudan who came to the United States in 2000 as a refugee. (Pet'r's Ex. B [Doc No. 1-2] at 6.)[1] He later became a lawful permanent resident on September 18, 2003. (*Id.*) Petitioner has diagnoses of post-traumatic stress disorder, anxiety, and depression. (*Id.* at 9.) In November 2015, Petitioner was separately convicted of two felonies for possession of a controlled substance under South Dakota Codified Laws § 22-42-5. (Marentette Decl. [Doc No. 7-1] at 10.) He was sentenced to five years imprisonment for these crimes. (*Id.* at 8.) On October 28, 2016, Petitioner was served with a Notice to Appear for removal proceedings. (*Id.* at 3.)

### B. The Removal Proceedings

Following Petitioner's criminal conviction and sentence, the Department of Homeland Security ("DHS") formally initiated removal proceedings on November 4, 2016. (*Id.* at 11.) The DHS alleged that Petitioner's two South Dakota felony convictions rendered him removable as an alien convicted of a controlled substance violation, pursuant to § 237(a)(2)(B)(i) of the Immigration and Nationality Act. (*See id.*

---

[1] Though labeled as Exhibit B, Petitioner's exhibits are separated by different numbers. [Doc. No. 1-2.] For example, the December 13, 2016 Order of the Immigration Judge is labeled Exhibit 1-(i). [Doc. No. 1-2 at 2.] The same holds true for Respondents' exhibits. [Doc No. 7-1.] For consistency's sake, this Report and Recommendation will cite to the exhibits as paginated by the ECF system.

2

at 34); *see also* 8 U.S.C. § 1227(a)(2)(B)(i).  On December 1, 2016, the Immigration Judge ("IJ") issued a memorandum to the parties stating an intent to terminate the proceedings.  (*See* Pet'r's Ex. B at 3.)  After receiving briefing from both parties, the IJ issued an order on December 13, 2016, terminating without prejudice the removal proceedings against Petitioner.  (*Id.* at 3–4.)

On January 11, 2017, the DHS filed a notice of appeal to the Board of Immigration Appeals ("BIA").  (Marentette Decl. at 17–19.)  The BIA sustained the DHS's appeal, reinstated the removal proceedings, and remanded the matter in an April 27, 2017 order, concluding that the IJ had erred in analyzing Petitioner's South Dakota convictions.  (*Id.* at 34–36.)  On remand, a different IJ granted Petitioner's application for cancellation of removal in a September 6, 2017 order.  (Pet'r's Ex. B at 6–13.)  Again, the DHS filed a timely appeal to the BIA, which issued an order on February 20, 2018, reversing the IJ and remanding the proceedings.  (Marentette Decl. at 90–91.)

Following a second remand and an additional hearing on Petitioner's I-589 application, the IJ issued a decision on April 27, 2018, denying Petitioner's various requests for relief and ordering him to be removed to South Sudan, or Sudan in the alternative.  (*Id.* at 93, 107.)  Petitioner timely filed an appeal of this decision to the BIA.  (Pet'r's Ex. B. at 33–38.)  While the BIA's decision was pending, Petitioner commenced this action by filing a petition for habeas corpus relief under 28 U.S.C. § 2241.[2]

---

[2]   In his Petition, Petitioner indicated he was also challenging his criminal convictions and sentences under 28 U.S.C. § 2255.  (Pet. at 4.)  However, Petitioner's convictions result from a violation of a South Dakota, rather than a federal, statute.  Thus, Petitioner is not "under sentence of a court established by Act of Congress," which is a

3

## II.   Analysis

### A.   Review of Detention under Habeas Corpus

Petitioner petitions the Court for a writ of habeas corpus to release him from ICE custody. He asserts his ongoing detention violates his due process and Eighth Amendment rights and exceeds the government's statutory authority to keep him in custody. (Pet. at 7–8.) Respondents contend that Petitioner's detention is mandatory under 8 U.S.C. § 1226(c) and that his petition should be denied because his final order of removal is currently being litigated before the BIA. (Resp. to Pet. at 1.)

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). The right to petition for habeas relief is a foundational legal principal in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage." *Preiser*, 411 U.S. at 485. Relevant here, 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear

---

condition for § 2255 relief.  28 U.S.C. § 255(a).  Rather, Petitioner is being detained for immigration removal proceedings under § 1226(c), which fails to meet the "in custody" requirement for a § 2255 challenge. *See Kandiel v. United* States, 964 F.2d 794, 796 (8th Cir. 1992) ("Because [petitioner's] sentence was fully expired by the time he filed his Section 2255 motion and the current deportation proceedings against him are merely a collateral consequence of his conviction, he is not 'in custody' for the purposes of Section 2255."); *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (finding that a petitioner did not satisfy the "in custody" requirement of § 2255 even though he was facing the collateral consequence of removal).  Moreover, Petitioner does not provide any factual allegations that support his position that his South Dakota convictions or sentences were unconstitutional or violated some other federal law.  This Court therefore does not analyze the underlying criminal conduct that Respondents assert renders Petitioner removable under § 1226(c).

4

habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), but a court's jurisdiction to do so is limited. 8 U.S.C. § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). This Court may not review a discretionary decision made by immigration authorities, such as the decision to order that a noncitizen be removed to another country. It may, however, review immigration-related detentions to determine if they comport with the demands of the Constitution. *Zadvydas*, 533 U.S. at 688. Accordingly, the Court's task is not to second-guess decisions made within the discretion of an immigration authority, but to assess the constitutional permissibility of the detention itself. *See Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

### B. Relevant Law Governing Petitioner's Immigration Detention

The government's authority to detain Petitioner stems from 8 U.S.C. § 1226(c). That statute requires the government to take into custody any alien who is removable from this country because he has been convicted of two or more crimes involving moral turpitude "when the alien is released." 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(ii); *see also, Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). Unlike non-criminal aliens, individuals detained pursuant to § 1226(c) may not be released, except in narrow circumstances that are inapplicable here. *See* 8 U.S.C. § 1226(c)(2). Detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28.

However, § 1226(c) "does not on its face limit the length of the detention it authorizes." *Id.*

The Supreme Court has not held that detentions under § 1226(c) lasting longer than six months require the government to justify their continuance. In *Demore*, the Supreme Court reversed a decision by the Ninth Circuit that Section 1226(c) was unconstitutional on its face because it authorized detention but provided no mechanism to challenge the basis for detention. The Supreme Court affirmed the legality of the petitioner's six-month detention under § 1226(c), finding that his detention was reasonably related to removal and was for a short period of time. 538 U.S. at 526–31. The Court noted that the Due Process Clause does not require the government to employ the least burdensome means when removing deportable aliens and that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528, 531. In addition, the Court emphasized that detentions pending removal proceedings under § 1226(c) do not raise the same constitutional concerns as § 1231 post-final-removal-order detentions because the former typically last for a much shorter period of time. *Id.* at 530 (noting detentions under § 1226(c) last "roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal"). Thus, the majority held, the petitioner's six-month detention to secure his attendance at removal proceedings did not offend the Constitution, but the majority declined to comment on whether a longer detention under § 1226(c) would raise constitutional concerns. However, Justice Kennedy noted in his concurrence that "were there to be an unreasonable delay by the [government] in pursuing and completing

6

deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33 (Kennedy, J., concurring).

Interpreting *Zadvydas* and *Demore*, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted*, *vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

Recently, in *Jennings*, the Supreme Court revisited the constitutionality of detentions under § 1226(c) and rejected the analysis utilized by the various circuits in the above decisions. 138 S. Ct. at 836. The case involved a class of non-citizens detained by immigration authorities under § 1226(c) and other detention statutes for periods lasting longer than six months. *Id.* at 838. The class sought and obtained from the district court an injunction requiring immigration authorities to hold individualized bond hearings for each class member to assess whether the government was justified in continuing their detention. *Id.* Applying the constitutional avoidance doctrine and relying on the reasoning of *Zadvydas*, the Ninth Circuit interpreted § 1226(c) to contain an implicit six-month time limit on the length of mandatory detention and upheld the requirement that

detainees be provided individualized bond hearings after six months of detention. *Id.* at 842, 846.

The Supreme Court reversed, finding that the Ninth Circuit misapplied the constitutional avoidance doctrine. *Id.* at 842. The Court noted that § 1226(c) was clear on its face that persons detained under the statute could only be released for witness-protection purposes. *Id.* at 846. Therefore, the constitutional avoidance doctrine could not be used to reinterpret the statute to impose a six-month time limit on mandatory detentions. *Id.* at 842 (explaining the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."). Without commenting on the constitutionality of the detentions at issue in the lawsuit, the Court remanded the case for further consideration. In doing so, the Court determined that a six-month *per se* rule of reasonableness was not supported by the text of § 1226(c), but stopped short of assessing whether and to what extent a prolonged detention under § 1226(c) would exceed constitutional bounds. *Id.* at 847. Thus, the constitutionality of prolonged detentions under § 1226(c) remains an open question.

Various circuit courts of appeals have wrestled with that question. Prior to *Jennings*, the Second and Ninth Circuits held that under § 1226(c), detentions longer than six months were *per se* unreasonable. *See Rodriguez*, 715 F.3d at 1138; *Lora*, 804 F.3d at, 614–16. As noted above, however, the *Jennings* court rejected that approach. *See* 138 S. Ct. at 843–44.

The Third and Sixth Circuits have embraced a more flexible approach to assessing the constitutionality of prolonged detentions under § 1226(c).  Noting that some extended detentions under § 1226(c) could raise a "serious risk" of violating the due process rights of detainees, the Third Circuit held that § 1226(c) only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes."  *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011).  Similarly, the Sixth Circuit held that § 1226(c) authorizes the government to "detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner," but that habeas relief may be warranted if the "process takes an unreasonably long time."  *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003).  Both courts declined to adopt a bright-line time limitation, finding that the reasonableness of a detention is a product of the particular facts of a case and the extent to which a detention justifiably serves the goals of the statute.  *Id.* at 271; *Diop*, 656 F.3d at 233.  Though decided before *Jennings*, the fact-specific approach utilized in these cases appears consistent with the Supreme Court's analysis in *Jennings*.

Although the Eighth Circuit has not commented on the constitutionality of prolonged detentions under § 1226(c), courts in the District of Minnesota have assessed the reasonableness of prolonged pre-removal detentions on multiple occasions.  Those courts have granted habeas relief where a noncitizen detainee remained in custody for a prolonged period of time while the government was unable to demonstrate an actual plan or timetable for future removal.  *Phan v. Brott*, No. 17-cv-432 (DWF/HB), 2017 WL

9

4465285, at *4 (D. Minn. Sept. 14, 2017), *R. & R. adopted*, 2017 WL 4460752 (D. Minn. Oct. 5, 2017) ("Respondents do not address how much longer they expect the pre-removal proceedings to last before the Board of Immigration Appeals . . . [and] have not shown that there is a reasonable likelihood Petitioner will be repatriated in the future."); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (Petitioner "has also provided evidence, which the government has failed to rebut, that his removal is not significantly likely in the reasonably foreseeable future . . . [and therefore] must be released from custody"); *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 926 (D. Minn. 2006) ("The Court finds that, in the absence of any plan or timetable for removal, and given his already seven months of detention by ICE beyond that deemed reasonable by the *Demore* Court . . . the Court finds that his release is warranted."). Though decided prior to *Jennings*, these cases embraced the common thread recognized by each of the courts of appeals that have considered the constitutional scope of detentions under § 1226: for a detention under that statute to be permissible, it must justifiably advance the goal of facilitating removals. If removal is unlikely, or even in reasonable doubt, the detention may offend the Constitution.

After *Jennings*, several courts in this District have addressed due process challenges to prolonged detention under § 1226(c) through careful examination of the facts of the particular case to determine whether the detention was reasonable. *See, e.g.*, *Muse v. Sessions,* No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sep. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132

10

(D. Minn. May 25, 2018); *Tindi v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-3663 (DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018). In each of those cases, based on the specific facts and circumstances of the case, the court determined the pre-removal detention was unreasonable. *Muse,* 2018 WL 4466052, at *4–6; *Mohamed*, 2018 WL 2392205, at *5–6; *Tindi*, 2018 WL 704314, at *3.

### C.     Petitioner's Detention

Petitioner challenges his detention as violating due process.[3] The Due Process Clause of the Fifth Amendment requires that "no person shall . . . be deprived of liberty, liberty or property . . . without due process of law." U.S. Const. amend. V. Because the Fifth Amendment forbids the government from depriving any "person" of liberty, liberty or property without due process, citizens and noncitizens alike are protected by its provisions. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects," *Zadvydas*, 533 U.S. at 690, and "it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993). "At the same time,

---

[3]    Petitioner asserts that his incarceration violates the Eighth Amendment. (Pet. at 6.) The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In their reply, Respondents did not address this claim. But neither did Petitioner argue that he would be entitled to more relief under the Eighth Amendment than the Due Process Clause. Because the Court recommends that Petitioner be granted some relief on his Fifth Amendment claim, specifically, a bond hearing, and Petitioner has not shown he would be entitled to any more relief on his Eighth Amendment claim than on his Fifth Amendment claim, his Eighth Amendment claim is moot. *See Muse*, 2018 WL 4466052, at *1 n.1 (deeming Fourth Amendment claim moot where relief was granted on due-process claim and the petitioner did not argue he would be entitled to more relief under the Fourth Amendment).

11

however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

In the most recent decision from this District analyzing detention under § 1226(c), the Honorable Patrick J. Schiltz noted that courts utilizing the fact-specific inquiry have considered several factors as guidance for identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Muse*, 2018 WL 4466052, at *3 (quoting *Diop*, 656 F.3d at 232). Among those factors are (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Reid*, 819 F.3d at 500–01).[4]

Here, application of the above factors supports Petitioner's argument that his continued detention—without any individualized bond hearing—would violate the Due

---

[4] In a footnote, Judge Schiltz observed that the First Circuit withdrew its decision in *Reid* following the Supreme Court's opinion in *Jennings*. *Muse*, 2018 WL 4466052, at *3 n.3. Judge Schiltz found that the *Reid* factors established "a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c). . . ," and even though the First Circuit withdrew the *Reid* decision after the Supreme Court decided *Jennings*. *Id.* (quotation and internal quotation marks omitted). In this same footnote, Judge Schiltz rejected comparison of the alien's length of detention with the length of the criminal sentence imposed for the qualifying convictions as a pertinent factor. *Id.*

12

Process Clause.  First, in examining the length of detention, Petitioner has been detained under § 1226(c) for twenty months, considerably longer than the "brief" period assumed in *Demore*.  Thus, "continued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the time frame described in *Demore*. *Diop*, 656 F.3d at 234.  The length of Petitioner's detention weighs in favor of granting relief.  He has been detained for twenty months without a hearing on whether or not he is a danger to the community or likely to flee. Petitioner's detention has lasted over three times as long as the detention in *Demore*.  Shorter detentions have been found to violate the Due Process Clause. *See, e.g.*, *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight months).  As detention continues past a year, courts become extremely wary of permitting continued custody without a bond hearing.  *See, e.g.*, *Vega v. Doll*, No. 3:17-01440, 2018 WL 3765431, at *10–13 (M.D. Pa. July 11, 2018), *R. & R. adopted*, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018) (twenty months); *Gjergji v. Johnson*, No. 3:15-1217, 2016 WL 3552718, at *9 (M.D. Fla. June 30, 2016) (eighteen months); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 381–82 (M.D. Pa. 2012) (over twenty-five months).[5]

---

[5]   Several courts have upheld detentions lasting over a year.  *See, e.g.*, *Dryden v. Green*, No. 18-2686, 2018 WL 3062909, at *5 (D.N.J. June 21, 2018) (finding no due-process violation for detention lasting "just over a year"); *Maynard v. Hendrix*, No. 11-0605, 2011 WL 6176202, at *1–2, *4 (D.N.J. Dec. 12, 2011) (holding that an 18-month detention did not violate the implicit reasonableness requirement in § 1226(c)). However, in both cases, the respective courts found that length of the delay was directly attributable to the alien.  Such circumstances are absent in this case.

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. *See Muse*, 2018 WL 4466052, at *5. In postulating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *See id.* (citing *Ly*, 351 F.3d at 272) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). Respondents assert that Petitioner's detention is constitutional because it has a foreseeable end date: when the BIA renders a decision on his appeal. (Resp. to Pet. at 15–16.) Respondents submit that briefing was completed on July 19, and the BIA will render a decision approximately sixty days from that date. This is consistent with the BIA's decision-making process in the two other appeals in this matter—which took fifty-eight and twenty-eight days respectively from the date briefing was due.

However, Respondents' temporal approximation amounts to nothing more than speculation in attempting to pinpoint an end date. Respondents do not acknowledge that if Petitioner receives an adverse ruling from the BIA, he will probably appeal that decision to the Eighth Circuit. In reality, it will likely be many months before Petitioner receives a final decision on his removability status. Therefore, this factor also favors Petitioner.

Third, courts examine the conditions of the alien's detention. *See Muse*, 2018 WL 4466052, at *5. Aliens detained under § 1226(c) are subject to civil detention rather than criminal incarceration. *Id.* (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). Petitioner is being detained by ICE at the Freeborn County Jail.

14

While the record is undeveloped on this issue, this Court assumes that Petitioner is detained alongside inmates who are serving criminal sentences. *See id.* (describing the alien's detention status at the Freeborn County Jail). Thus, this factor weighs in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. *See id.* An alien should not be penalized for raising legitimate defenses to removal. *See Ly*, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Muse*, 2018 WL 4466052, at *4 *(quoting Ly*, 351 F.3d at 272*)*. If courts ignored the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." *Id.* (quoting *Ly*, 351 F.3d at 272).

Petitioner's only role in "delaying" the proceedings would be his *bona fide* appeal of the adverse April 27, 2018 removal order. The relevant inquiry under this factor is whether Petitioner had a role in prolonging his detention through dilatory tactics. A review of the record compels an answer in the negative, placing this factor on Petitioner's side. Petitioner has not sought in any way to delay the proceedings unnecessarily.

15

Fifth, courts consider the nature and extent of the government's role in causing delay in the removal proceedings. *See id.* "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Id.* (quoting *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)).

Though the government initiated two appeals in Petitioner's immigration case, it was not necessarily unreasonable for it to do so, as the BIA sustained both appeals. The government has complied with all deadlines and not sought unnecessary delays. The record indicates that both the BIA and the various IJs to handle Petitioner's proceedings have been prompt in rendering decisions. Thus, this factor weighs in favor of the government.

Lastly, courts consider whether the proceedings will culminate in a final removal order. *Id.* Higher likelihood of the alien's removal means longer periods of detention may be reasonable. *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). Like the parties in *Muse*, this factor does not favor one over the other. While the most recent decision ordered Petitioner's removal, he has timely appealed to the BIA. Neither party analyzes the merits of the arguments presented before the IJ or the BIA, nor is this Court inclined to speculate about the likelihood of Petitioner's removal.

In sum, four factors weigh in Petitioner's favor, one weighs in the government's favor, and the last favors neither party. Based on this analysis, the Court finds that the continued detention of Petitioner without an individualized bond hearing would violate his right to due process under the Fifth Amendment. A bond hearing at which the parties

may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *Muse*, 2018 WL 4466052.

### III.   Conclusion

Accordingly, based on all the files, records, and proceedings herein **IT IS HEREBY RECOMMENDED** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **GRANTED IN PART, DENIED IN PART, and DISMISSED WITHOUT PREJUDICE IN PART**, as follows.

1. If the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a bond hearing within thirty days of the District Court's order.  At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing.

2. Petitioner's claim for relief under 28 U.S.C. § 2255 is not cognizable in this § 2241 habeas action and should be dismissed without prejudice for lack of jurisdiction.

3. Petitioner's request for immediate release should be denied

Dated:  September 28, 2018            s/ *Hildy Bowbeer*
                                                       HILDY BOWBEER
                                                       United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation. A party may respond to the objections within fourteen days after being served with a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).